EAGLE MACHINE CO., INC. *v.* AMERICAN DISTRICT TELEGRAPH CO., INC.

[No. 18,869. Filed March 6, 1957. Rehearing denied April 5, 1957. Transfer denied May 9, 1957.]

*Leroy K. New, Edward F. New,* both of Indianapolis, and *Hurt & Blue,* of Martinsville, for appellant.

*Elbert R. Gilliom, Richard L. Gilliom, Gilliom, Armstrong & Gilliom (of counsel),* of Indianapolis, and *Hugh R. Couch, of* Martinsville, for appellee.

ROYSE, J.—Appellant brought this action against appellee for damages for conversion of its property by certain employees of appellee between October 1, 1951 and September 30, 1952. Trial to a jury. At the conclusion of appellant's evidence the trial court sustained appellee's motion to peremptorily instruct the jury to return a verdict in its favor. By proper assignment of error that action of the trial court is questioned here.

The facts as disclosed by the record herein may be summarized as follows: Appellant is an Indiana Corporation engaged in the business of selling automotive parts and has its office and plant in the City of Indianapolis. Appellee, an Indiana Corporation, is engaged in the business of installing and maintaining

burglary, holdup and fire alarm systems for business concerns.

Appellant has continuously since June 18, 1946, been a subscriber to appellee's service. At the time involved there was a written agreement between the parties, the provisions of which, pertinent to this case, are as follows:

"1. The Contractor agrees to maintain or cause to be maintained, during the term of this agreement, in the premises of the Subscriber, at 635 East Market Street, in the City of Indianapolis, State of Indiana, a Central Station Burglar Alarm and Holdup Alarm System, and specified in the schedule on the reverse side hereof, including transmission boxes and wire connections, necessary to transmit signals from the premises of the Subscriber to the Contractor's Central Station, and will, subject to the terms and conditions hereof, until the termination of this agreement, maintain such system in good working order, with the understanding that the entire system, including all devices, instruments, appliances and all connections, wires, conduits, foils, screens, cabinets, springs and other materials associated therewith, is and shall be and remain the personal property of the Contractor.

"2. The Contractor, on receipt of a burglar alarm signal from the Subscriber's premises, agrees to send its representative to said premises to act as agent of and in the interest of the Subscriber. If provided with a key by the Subscriber for such purpose, the representative will enter the premises and search them. The Subscriber hereby authorizes and directs the Contractor to cause the arrest of any person or persons unauthorized to enter his premises and to hold him or them until released by the Subscriber or an authorized known representative, and in such cases to idemnify the Contractor against any liability, cost or expense in consequence of such arrest. . . .

"13. It is agreed by and between the parties hereto: that the Contractor is not an insurer; that the payments hereinbefore named are based solely on the value of the services provided for herein;

that, from the nature of the services to be rendered it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure on the part of the Contractor to perform any of its obligations hereunder; that in case of the failure of the Contractor to perform any of its obligations hereunder, and a resulting loss to the Subscriber, the Contractor's liability hereunder shall be limited to and fixed at a sum equal to ten percent of the annual service charge, hereinabove provided for, but in no event amounting to less than the sum of fifty dollars, as liquidated damages, and not as a penalty, and this liability shall be exclusive. . . .

"17. *There are no verbal understandings changing or modifying any of the terms of this agreement.* This agreement supersedes agreement between the above parties, hereto dated 6-18-46, and all supplemental agreements thereto." (Our emphasis.)

During the period involved in this action appellee had, among others, in its employ Leonard Lester Johnson and Donald Mantooth. Johnson, during that time, was temporary service supervisor in charge of appellee's office during the nighttime. Mantooth had office duties when not dispatched as a representative to answer burglar alarms or other protection services furnished by appellee. They wore uniform cap and clothing. They were special police officers and were armed with pistols. They both were sent on several occasions during this period to appellant's premises.

On or about December 18, 1952 these two employees, among others, had been sent to the J. C. Penny Company store where an alarm was recorded. They and several others were arrested by the police for stealing merchandise from that store. In signed statements they both admitted having stolen property of appellant during the period involved herein.

Records of appellant showed an inventory loss of $21,444.75 during the year in question here. During

that time appellant employed private detectives who had made a thorough investigation of its employees.

It is further disclosed by the record that is was the policy of appellee to make an investigation of the reputation and character of its employees. Such an investigation was made in reference to Johnson and Mantooth. References submitted wrote appellee they were honest and courageous and worthy of trust. The F. B. I. and Indianapolis Police Department made an investigation of these men before they were granted special police powers. It was appellee's policy to make spot checks on how their employees conducted themselves when answering an alarm. Such checks were made several times on these men during the year ending September 30, 1952.

Appellant contends that the parties hereto had certain understandings concerning what appellee would do if hired by it; that the trial court permitted evidence of this to go to the jury thus revealing the written contract was not the entire agreement; that said contract does not state it is the entire agreement; that the evidence shows appellee clearly failed to express in said contract the obligation it undertook to perform, namely, the protection of appellant's property.

Appellee asserts the pivotal question here is whether there is any evidence in the record tending to show that certain proven thefts of appellant's merchandise by persons who were appellee's employees were committed within the scope of their employment so as to constitute conversion by appellee; that we are here concerned only with the question of whether there is proof in the record to establish prima facie the case of conversion pleaded in the complaint.

In support of its contention appellant asserts because under the terms of the written contract the search of its premises by appellee's employees was for the

protection of its property, and when there was evidence that said employees while answering an alarm from its premises stole merchandise from it, this was sufficient to permit the case to go to the jury, citing: *Goodyear Tire & Rubber Co.* v. *Paddock* (1942), 219 Ind. 672, 40 N. E. 2d 697, and Restatement of Agency, Vol. 1, §245, pp. 547, 548.

We do not believe either of these authorities are applicable to the question presented here. In the Goodyear case, *supra,* the action was for damages for an assault and battery and not for conversion. In that case our Supreme Court, after distinguishing the case of *Moskins Stores, Inc.* v. *DeHart et al.* (1940), 217 Ind. 622, 625, 29 N. E. 2d 948, 949, pointed out (p. 674) that appellant's agent had charge of its office and the jury "may have reasonably concluded that, being the office manager, he was vested with authority to properly eject persons from the premises. This would include authority to use such force as might reasonably be necessary to accomplish the ejectment of an unlawful intruder or one who was creating a disturbance on the premises." In affirming the judgment the Supreme Court held the evidence was sufficient to support the conclusion that appellant's agent violently attacked the appellee.

In Comment (a) to the citation from the Restatement of Agency, *supra,* it is stated, in part:

"a. Nature of employment. Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others."

In this case the evidence is uncontradicted that the employees of appellee were not authorized "to pick up

and carry and transport any merchandise" on the premises of appellant.

Appellant relies heavily on the case of *Williams* v. *Brooklyn District Telegraph Co.* (1895), 12 Misc. 565, 33 N. Y. S. 849, 850. This was an action for breach of contract. There, in a contract to provide a watch service to protect the plaintiff's residence, the appellant company had agreed "for that purpose to employ honest and competent servants." The plaintiff for its cause of action alleged the contract, and charged that the defendant in violation of the contract employed one Burg (an ex-convict) who broke into the house and stole property therefrom. Liability in that case turned on the question whether the defendant exercised reasonable care in selecting Burg as a watchman. That question was specifically submitted to the jury for its decision. The court concluded its opinion by saying:

> "Defendant was bound to exercise reasonable care in the selection of its servants, and, if it neglects to do so (and the jury have here so found), it cannot now be permitted to plead, as an excuse for failing to do the very thing it was employed to do, that its servant was the guilty party, and that it has no concern with or responsibility for his unlawful acts, producing the very opposite result from that which it was employed to effect."[1]

In this case, as heretofore shown, the record discloses appellee made inquiry regarding the character of these employees from their former employers and both were cleared by the F. B. I. and the Indianapolis Police Department before they were granted special police powers.

In *W. Witmark & Sons* v. *Hall-Berwin Corporation* (1918), 223 N. Y. 576, 119 N. E. 1086, Anno. 15 A. L. R. 2d 858, the court stated:

---

1. See discussion of that case in 15 A. L. R. 2d 860.

"This action was brought to recover damages for the conversion of certain music plates, dies and cuts. The complaint alleged that the defendant was a corporation engaged in the management of buildings, and it undertook, among other things, to perform the services and functions usually performed by janitors; that the plaintiff was engaged in the music publishing business and for that purpose occupied and used the building at 144 West Thirty-seventh street in the borough of Manhattan, City of New York. In connection with its business, the plaintiff kept in said building a valuable stock of music plates, cuts and dies; that the plaintiff entered into an agreement with the defendant whereby the defendant undertook the management and operation of plaintiff's building; that among the duties assumed by the defendant under said contract were the operation of the heating apparatus, elevators and other machinery used in the operation of said building, to keep the entire building thoroughly clean and to render in and about the said building the services usually performed by a janitor; that the defendant selected and appointed as the servant through whom it undertook to perform such duties of a janitor one Oliver Johnson who was dishonest, improper and an unfit person to be trusted with the functions of a janitor of said building and with access to the plaintiff's property therein; and that said Johnson, while he was acting for the defendant as its agent or substitute in exercising said functions of a janitor of the said building and while he had access to plaintiff's property in said building by virtue of such employment, stole from said building a number of plaintiff's music plates, cuts and dies.

"The following question was certified: 'Does the complaint state facts sufficient to constitute a cause of action?'

. . . "Order affirmed with costs, and question certified answered in the negative."

In *Vandalia R. Co.* v. *Upson Nut Co.* (1913), 55 Ind. App. 252, 101 N. E. 114, 388, this court held that evidence of failure to deliver a shipment of pig iron under an implied contract to deliver did not constitute con-

version of the shipment by the defendant carrier. The court said at pp. 254, 255:

"A conversion by a common carrier or other bailee implies some wrongful act, a wrongful disposition, or withholding of the property. There must be an affirmative wrongful act, and mere nonfeasance, or failure to perform a duty imposed by contract or implied by law, is not conversion. There must be a wrongful taking or detention, or an illegal use, misuse, or assumption of ownership. A misdelivery by a carrier may be a conversion but a mere nondelivery is not."

That is the rule generally in other jurisdictions, as is shown in 53 Am. Jur. (Trover and Conversion), p. 822, Sec. 27:

"Sec. 27. Breach of Contract—The mere breach of a contract does not necessarily constitute a conversion. This rule is particularly applicable to a failure to perform an act obligatory by contract, since some affirmative act on the part of the defendant is usually regarded as necessary to constitute a conversion. The fact that a breach of the contract results in the loss of the property does not affect the rule stated."

See also, *Burkhart et al.* v. *Simms, Administrator* (1945), 115 Ind. App. 576, 587, 60 N. E. 2d 141; *Bimel et al.* v. *Boyd* (1913), 53 Ind. App. 310, 313, 101 N. E. 657; *Seip, Admr.* v. *Gray et al.* (1949), 227 Ind. 52, 83 N. E. 2d 790.

Based on the authorities cited herein, for the reasons hereinafter stated we do not believe the trial court erred in directing the jury to find for appellee.

Despite the statement of appellant to the contrary, we are of the opinion the written contract of June 18, 1946 constituted the whole agreement between the parties. Section 17 of this agreement set out above provides there are "no verbal understandings changing or modifying any of the terms of this agreement." It

further provides it supersedes a prior and all supplemental agreements. The evidence which appellant referred to as being part of the present agreement related to conversations held many years before the present contract was executed in reference to the service to be rendered to appellee.

Assuming that under the terms of this agreement there was an implied obligation on the part of appellee to hire honest men to act as guards and they ■ failed to do so, on the authorities cited herein that would not constitute conversion. Furthermore, the record as set out above shows that appellee made every reasonable effort it could to learn the reputation and character of its employees, including those who stole from appellant.

We do not deem it necessary to answer specifically all of the contentions of appellant on the question presented here, because we are convinced it failed to establish a prima facie case of conversion.

Judgment affirmed.

NOTE.—Reported in 140 N. E. 2d 756.