## Katherine A. KONKLE, Appellant– Plaintiff,

v.

## Floyd B. HENSON; The United Pentecostal Church located in Warsaw, Indiana; Indiana District Board of the United Pentecostal Church International (incorporated); and The United Pentecostal Church International (incorporated), Appellees–Defendants.

No. 43A03–9507–CV–250.

Court of Appeals of Indiana.

Oct. 28, 1996.

---

Kirk A. Weikart, Harrington Maley Gardner & Sayre, Richmond, Thomas R. Lemon, Jane L. Kauffman, Lemon Armey Hearn & Leininger, Warsaw, for appellant–plaintiff.

Arthur G. Surguine, Jr., Craig J. Bobay, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, Frank J. Gray, Travis S. Friend, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for United Pentecostal Church International.

Richard K. Helm, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for United Pentecostal Church Located in Warsaw, Indiana.

## OPINION

STATON, Judge.

Katherine A. Konkle ("Konkle") had been sexually molested by Floyd Henson, a minister of her church, since she was seven years old. The minister, Floyd Henson, is not a party to this appeal. After a grant of sum-

mary judgment in favor of the United Pentecostal Church located in Warsaw, Indiana (the "Local Church"); the Indiana District Board of the United Pentecostal Church International (the "District Board"); and the United Pentecostal Church International (the "International Church") (collectively referred to as the "Church Defendants"), Konkle appeals and presents three issues for our review which we restate as follows:

I. Whether the trial court erred in granting summary judgment because the First Amendment bars judicial intervention in ecclesiastical affairs.

II. Whether the trial court erred in determining that the acts committed by Floyd Henson were committed outside the scope of his employment.

III. Whether the trial court erred in determining that Konkle's claims were barred by the statute of limitations.

On cross-appeal, the Church Defendants raise several issues which we consolidate and restate as follows:

IV. Whether the trial court erred in denying summary judgment to the Local Church because a member of an unincorporated association cannot sue an association of which she is a member.

V. Whether any of the claims made by Konkle are causes of action recognized in the State of Indiana.

We affirm in part, reverse in part, and remand.

The facts most favorable to the nonmovant, Konkle, reveal that she was molested by Floyd Henson ("Henson"), a minister at the Local Church, from the time she was seven. Konkle began experiencing emotional problems and entered counseling in middle school. The counseling continued for seven or eight years, but Konkle never told her counselor about the on-going molestation. When Konkle was about fifteen or sixteen, she realized that Henson's behavior was wrong. Approximately one year later, she also realized that she could control and prevent some of Henson's behavior. She was able to limit his actions to occasionally touching her breast or other parts of her body through her clothes. When Konkle was approximately seventeen or eighteen, she and her mother discussed the possibility of filing criminal charges against Henson but decided against it. The last touching occurred in November or December 1990, when Konkle was twenty, shortly before Henson resigned.

Konkle filed her complaint on October 2, 1992, four years after she reached the age of majority, but less than two years after the final touching occurred. She alleged various causes of action against Henson and the Church Defendants.[1] Through her various allegations of misconduct by the Church Defendants, Konkle states claims for negligent hiring, supervision and retention of an employee and respondeat superior liability.

The Church Defendants filed motions for summary judgment on Konkle's claims.[2] The trial court granted summary judgment in favor of the Church Defendants on the basis that the First Amendment bars judicial intervention in ecclesiastical affairs. In its order, the trial court recognized that the issue of intervention was an issue of first impression in Indiana and that a higher court might disagree with that determination. To aid the reviewing court, the trial court also ruled on additional grounds for summary judgment which might become relevant if judicial intervention is proper. Thus, the trial court: (1) granted summary judgment to the Church Defendants upon the issue of respondeat superior because the acts were outside the scope of the minister's employment; (2) denied summary judgment to the Local Church on the issue of claims by a member of an unincorporated association; (3) denied summary judgment to the Church Defendants upon the issues of negligence against the Church Defendants; and (4)

---

1. Her claims against Henson included breach of fiduciary duty, intentional infliction of emotional distress, assault and battery, sexual battery, molestation of a child, false imprisonment and "other intentional acts." They are not at issue in this appeal except to the extent the Church Defen-

dants might be liable under the doctrine of respondeat superior.

2. Henson did not take part in the motions for summary judgment and is not a party to this appeal.

found that the statute of limitations would bar recovery against the Church Defendants with the exception of acts committed after August 4, 1990. Konkle now appeals.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Once the moving party has sustained this burden, the non-moving party must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or a response to the motion, a moving party or non-moving party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the non-moving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied*. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## I.

### *The First Amendment*

Konkle first argues that the trial court erred in determining that the First Amendment barred judicial intervention in her claims. The First Amendment, applicable to the states through the Fourteenth Amendment, contains two freedoms with respect to religion: the freedom to believe and the freedom to act. *Cantwell v. Connecticut*, 310

U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213(1940). The freedom to believe is absolute, while the freedom to act is subject to regulation for the protection of society. *Id.* at 303–04, 60 S.Ct. at 903–04. However, any regulation must meet a three-part test:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'

*Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1970) (citations omitted).[3] Our review focuses on part three, "excessive government entanglement" in addressing the tort liability of churches for acts committed by ministers.

Excessive entanglement occurs when the courts begin to review and interpret a church's constitution, laws, and regulations. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709–10, 96 S.Ct. 2372, 2380–81, 49 L.Ed.2d 151 (1976), *reh. denied*, 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976). The First Amendment prohibits courts from resolving doctrinal disputes or determining whether a religious organization acted in accordance with its canons and by-laws. *Id.* at 713, 96 S.Ct. at 2382. As a result, to determine whether Konkle can be permitted to proceed on her claims of negligent hiring and respondeat superior liability, each of these causes of action must be analyzed in light of the First Amendment.

First, we address whether Konkle's claim for negligent hiring may be curtailed by the First Amendment. Indiana recognizes a tort of negligent hiring and retention of an employee. *See Levinson v. Citizens Nat. Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind.Ct.App.1994). Indiana has adopted the RESTATEMENT (SECOND) OF TORTS § 317 as the standard with regard to this tort. *Frye v. American Painting*, 642 N.E.2d 995, 998 (Ind.Ct.App.1994).[4] In order to deter-

---

3. Although *Lemon* has been criticized and not always applied by the U.S. Supreme Court in freedom of religion cases, it has not been overruled and is still a viable doctrine. *See Lamb's Chapel v. Center Moriches Union Free School*

*District*, 508 U.S. 384, 394–400, 113 S.Ct. 2141, 2148–50, 124 L.Ed.2d 352 (1993).

4. Section 317 states:

mine if an employer is liable for negligent hiring or retention of an employee, the court must determine if the employer exercised reasonable care. *Id.*

The Church Defendants argue that in order to determine if their actions were reasonable, the court must judge the church's internal policies and procedures, which are based upon scripture. They argue that this would constitute excessive entanglement. Konkle counters that the First Amendment does not preclude review of a church's operational activities when they endanger public safety. This is an issue of first impression in Indiana and other courts are divided in their approach.

The United States Supreme Court has instructed that the First Amendment does not prohibit courts from opening their doors to religious organizations.[5] *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969). Instead, a court can apply neutral principles of law to churches without violating the First Amendment. *Id.* The First Amendment only prohibits the court from determining underlying questions of religious doctrine and practice. *Id.*

■ Applying this analysis to tort claims against religious organizations, several courts have determined that when purely secular conduct is at issue, courts can apply secular standards and hold churches responsible for the effects of their conduct on third parties. *See Moses v. Diocese of Colorado*, 863 P.2d 310, 320 (Colo.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994) (claims for breach of fiduciary duty, negligent hiring and supervision, and vicarious liability are not based solely on ecclesiastical or disciplinary matters which would raise First Amendment concerns); *Erickson v. Christenson*, 99 Or.App. 104, 781 P.2d 383 (1989) (claims for breach of fiduciary duty and intentional infliction of emotional distress do not violate First Amendment); *Destefano v. Grabrian*, 763 P.2d 275 (Colo.1988) (no First Amendment protection when claims are not rooted in religious belief). Thus, the First Amendment does not bar negligence claims against churches for actions of ministers.[6] *Moses, supra*, at 321.

Other courts, however, have rejected this conclusion, holding that the First Amendment bars a claim against a church for negligent hiring, supervision, and retention of a

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
(a) the servant
(I) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(I) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.
COMMENT:

\* \* \* \* \* \*

c. *Retention in employment of servants known to misconduct themselves.* There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others. This is true although he has without

success made every other effort to prevent their misconduct by the exercise of his authority as master. Thus a railroad company which knows that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices.
RESTATEMENT (SECOND) OF TORTS, § 317 (emphasis in original).

5. Scott C. Idleman, "Liberty in the Balance: Religion, Politics, and American Constitutionalism," 71 Notre Dame L.Rev. 991, 1024–5, n. 150 (1996).

6. Chief Justice Rehnquist has previously indicated that the cases involving the court's power to act in internal church disputes are not applicable to cases involving harm to third persons. The limits on the court's power are confined to intrachurch disputes. *See General Council on Finance & Administration, United Methodist Church v. California Superior Court, San Diego County*, 439 U.S. 1369, 1372, 99 S.Ct. 35, 37–38, 58 L.Ed.2d 77 (1978) (Rehnquist, Circuit Justice 1978).

minister. *See Schmidt v. Bishop*, 779 F.Supp. 321 (S.D.N.Y.1991); *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis.2d 302, 533 N.W.2d 780 (1995). These courts hold that even though religious conduct per se is not at issue, the court would have to determine if the Church's conduct was reasonable, requiring "interpretation of church canons and internal church policies and practices." *Pritzlaff, supra*, 533 N.W.2d at 790.

■ Here, review of Konkle's claims does not require any inquiry into religious doctrine or practice. Henson's actions were not religiously motivated. Instead, review only requires the court to determine if the Church Defendants knew of Henson's inappropriate conduct, yet failed to protect third parties from him. The court is simply applying secular standards to secular conduct which is permissible under First Amendment standards. *Moses, supra.*

The First Amendment does not provide an absolute freedom to act with regard to religious beliefs. *Cantwell, supra* at 303, 60 S.Ct. at 903. Instead, that freedom can be regulated for the protection of society. *Id.* The protection of society requires that religious organizations be held accountable for injuries they cause to third persons. Accordingly, we conclude that Konkle's claim is not barred by the First Amendment. To hold otherwise would be to extend the protections beyond that included within the First Amendment and cloak churches with an absolute and exclusive immunity for their actions.

■ Second, with regard to Konkle's claim under the doctrine of respondeat superior, the Church Defendants cite no authority to support their contention that the First Amendment prohibits such claims nor does our research reveal such authority. Instead, courts apply traditional tort law to the claims and determine whether the minister was acting within the course and scope of his employment when the tort occurred. *See Tichenor v. Roman Catholic Church of New Orleans*, 32 F.3d 953, 959–60 (5th Cir.1994); *Moses, supra*, at 329–31; *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584, 588 (1991); *Destefano, supra*, at 286–87. Thus, we conclude that Konkle's respondeat superior claims are not barred by the First Amendment.

Because the Church Defendants are not afforded First Amendment protection from Konkle's claims, we conclude that the trial court erred in granting summary judgment in their favor. However, our review is not complete because the trial court made alternate findings which can serve as the basis for summary judgment. Because we may affirm a grant of summary judgment on any theory supported by the designated evidence, we must review the other issues raised on appeal in conjunction with these alternative findings.

## II.

*Respondeat Superior Liability*

■ Konkle next alleges that the trial court erred in determining that the acts committed by Henson were outside the scope of his employment and thus, the Church Defendants were not vicariously liable for his actions.[7] Under the doctrine of respondeat superior, an employer is liable for the acts of its employees which were committed within the course and scope of their employment. *Stropes v. Heritage House Childrens Center of Shelbyville*, 547 N.E.2d 244, 247 (Ind. 1989), *reh. denied.* An employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer. *Gomez v. Adams*, 462 N.E.2d 212, 223 (Ind.Ct.App.1984), *reh. denied, trans. denied.* Even if an employee is primarily motivated by self-serving purposes, if he was at least partially serving his

---

7. Konkle also raises the issue of whether the Church Defendants' owed a non-delegable duty, under the common carrier exception to respondeat superior liability, to protect her from harm. *Stropes v. Heritage House Childrens Center of Shelbyville*, 547 N.E.2d 244, 250 (Ind.1989). However, this is a separate and distinct theory of liability from respondeat superior because it is not dependant on whether Henson was acting within the course and scope of his employment. *Id.* at 251. In her complaint, Konkle made no allegations that the Church Defendants owed her a non-delegable duty of care. Thus, the allegations of her complaint do not support this theory of liability.

employer's interests, liability will accrue. *Id.* However, simply because an act could not have occurred without access to the employer's facilities does not bring it within the scope of employment. *Id.*

■ The determination of whether an employee was acting within the scope of his employment does not turn on the type of act committed. *Stropes, supra,* at 249. An employer can be vicariously liable for the criminal acts of an employee. *See id.; Gomez, supra.* The test is whether the employee's actions were at least for a time authorized. *Stropes, supra,* at 250. If there is a sufficient association between the authorized and unauthorized acts, then the unauthorized acts can be within the scope of employment. *Id.* at 249–50. If some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is·one for the jury. *Id.* However, if none of the employee's acts were authorized, there is no respondeat superior liability and summary judgment is proper. *Id.; Gomez, supra,* at 224–25.

In *Stropes,* a hospital aide sexually assaulted a mentally retarded individual left in the hospital's care. He began by bathing the boy and changing his bedding which was in furtherance of his employer's business. However, he then sexually molested the boy, an act not authorized by his employer. The unauthorized acts were not drastically different from the authorized acts. Both involved touching the unclothed body of the patient. *Id.* at 249. The court determined that because both authorized and unauthorized acts were at issue and they were of similar character, there was a question of fact for the jury and summary judgment was not proper. *Id.* at 250.

The *Stropes* Court contrasted these facts with the situation in *Eagle Mach. Co. v. Am. Dist. Tel. Co.,* 127 Ind.App. 403, 140 N.E.2d 756 (1957), *trans. denied.* In *Eagle Machine,* two employees of a security company stole car parts from a repair shop while they were responding to an alarm. *Id.,* 140 N.E.2d at 758. The employees were not performing authorized acts when they took the car parts because they were not authorized to touch or move the inventory of the repair shop while responding to the alarm. Thus, they did not begin by performing authorized acts which melted into unauthorized acts, so the employer was not vicariously liable. *Id.* at 759.

■ Here, the acts of molestation perpetrated by Henson were not acts authorized by the Pentecostal Church. Although many of the acts took place in the church building, that is not enough to create liability. *Gomez, supra,* at 223. The church constitution specifically states that acts of sexual deviance are grounds for dismissal from the ministry. In addition, there is no evidence that at the time Henson molested Konkle he was engaging in authorized acts. Konkle testified that on one occasion, Henson gave her a bible to read as he began to attempt to engage in intercourse with her. However, there is no showing that he was teaching Konkle or performing any other pastoral acts at the time. The unauthorized acts committed by Henson are not similar to his duties as a minister. Henson may have had access to Konkle because of his position as pastor, but he ·was not engaging in authorized acts or serving the interests of his employer at the time he molested Konkle. Thus, we conclude that summary judgment in favor of the Church Defendants on the issue of respondeat superior liability was proper.[8]

### III.

### *Statute of Limitations*

Konkle further argues that the trial court erred when it determined that the statute of limitations bars recovery against the Church Defendants with the exception of acts occur-

8. The Church Defendants also dispute whether Henson was an employee of the District Board or the International Church. The trial court did not make a finding concerning the employment relationship. Normally, the question of whether a master-servant relationship exists is a question of fact making summary judgment inappropriate. *Daugherty v. Fuller Engineering,* 615 N.E.2d 476, 480 (Ind.Ct.App.1993), *trans. denied.* However, because we determine that Henson's acts were outside the scope of his employment, summary judgment in favor of the Church Defendants was appropriate.

ring after August 4, 1990. Konkle's only claim remaining against the Church Defendants is her claim for negligent hiring, supervision and retention of Henson. The parties agree that the applicable statute of limitations for such claims is two years. IND.CODE § 34-1-2-2(1) (1988). The parties disagree, however, concerning when the statute of limitations began to run for Konkle's claims.

Konkle argues that the acts constitute a continuing wrong so the statute of limitations did not begin to run until November or December 1990, the date of the final incident; therefore, her action filed on October 2, 1992, was timely. The Church Defendants, on the other hand, argue that each act was a separate tort and the statute of limitations began to run when each act was committed.[9]

■ When a defendant raises the issue of the statute of limitations defense and puts evidence before the court to show that the actions at issue took place outside the statute of limitations period, the burden is on the plaintiff to show that the acts occurred within the limitations period. *Conard v. Waugh*, 474 N.E.2d 130, 134 (Ind.Ct.App.1985).

■ Konkle attempts to meet this burden by arguing that Henson's conduct constituted a continuing wrong, thus tolling the statute

of limitations until the last act. When an entire course of conduct combines to produce an injury, a continuing wrong occurs. *Union City Body Co., Inc. v. Lambdin*, 569 N.E.2d 373, 374 (Ind.Ct.App.1991). A single act in the sequence does not produce the injury. Instead, it is the combination of acts. *Id.*

■ The doctrine of continuing wrong is used in medical malpractice and worker's compensation cases. *See e.g., Havens v. Ritchey*, 582 N.E.2d 792 (Ind.1991); *Union City, supra.* To support the application of the doctrine of continuing wrong to her personal injury claim, Konkle cites *Montgomery v. Crum*, 199 Ind. 660, 161 N.E. 251 (1928) (a child abduction case) and *Gunder v. Tibbitts*, 153 Ind. 591, 55 N.E. 762 (1899) (a seduction case).[10] *Montgomery* and *Gunder* are examples of the rule in Indiana "that a cause of action accrues, and ... the statute of limitations begins to run, when the resultant damage ... is 'susceptible of ascertainment.'" *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 842 (Ind.1992) (quoting *Montgomery, supra*, 161 N.E. at 259). In both *Montgomery* and *Gunder*, the injury could not be ascertained until the continuing conduct ceased. This "ascertainment rule" has

**9.** Because Konkle was less than eighteen years old when most of the conduct at issue occurred, she had until two years after her eighteenth birthday, August 2, 1990, to bring any claims for acts occurring before her eighteenth birthday. *See* IND.CODE § 34-1-2-5 (1988) and IND.CODE § 1-1-4-5(21) (Supp.1992).

**10.** Konkle also cites *Keane v. Pachter*, 598 N.E.2d 1067 (Ind.Ct.App.1992), *reh. denied, trans. denied,* in support of the application of the doctrine of continuing wrong. However, this case is inapplicable to the present case. *Keane* discussed the concept of whether a nuisance was a permanent or recurring nuisance. The running of the statute of limitations is not tolled during a recurring nuisance. Instead, a new cause of action arises each time it occurs and a new statute of limitations begins running. *Id.* at 1072. Recovery can only be had for the occurrences whose statutes have not run. *Id.* Even if we were to apply *Keane* to the present case, it would not help Konkle. She would still only be able to recover for instances of molestation which had occurred during the two years prior to the filing of her complaint.

For further support, Konkle directs us to cases from other jurisdictions which still apply the

doctrine of continuing wrong to tort cases. *See Page v. U.S.*, 729 F.2d 818 (D.C.Cir.1984) (wrongful prescription of addictive drugs); *Rochon v. FBI*, 691 F.Supp. 1548, (D.D.C.1988)(racial harassment); *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993)(intentional infliction of emotional distress); *Bustamento v. Tucker*, 607 So.2d 532 (La.1992) (intentional infliction of emotional distress). These cases are inapplicable to the present situation for several reasons. First, each of these cases looks at conduct in which a single act does not cause harm. *Page, supra,* at 822–23; *Rochon, supra,* at 1563–64; *Curtis, supra,* 850 P.2d at 755; *Bustamento, supra,* at 540. Each alleged instance of sexual molestation perpetrated by Henson, on the other hand, did cause an injury to Konkle. In addition, several of these cases specifically exempt sexual battery or other singular torts from the application of the doctrine. *Curtis, supra,* 850 P.2d at 754; *Bustamento, supra,* at 540. Finally, two of these jurisdictions do not view the statute of limitations favorably. Instead, the statute of limitations are to be strictly construed and the burden is placed on the defendant to prove that the claim is barred. *See Bustamento, supra,* at 537; *Curtis, supra,* 850 P.2d at 752.

merged with the "discovery rule" in Indiana. *Id.* at 843.

Under the discovery rule, a "cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling, supra,* at 843. Here, the basis for Konkle's remaining claim against the Church Defendants is because of their supervision and retention of Henson. As a result, she was injured. Thus, each time Henson touched Konkle inappropriately, she was injured by the Church Defendants' breach of duty, and a new cause of action arose. Thus, the statute of limitations would begin to run once Konkle "discovered" the wrongdoing and the resulting injury.

Konkle admits that she knew the sexual molestation was occurring and that it was wrong when she was fifteen or sixteen years old. She also had been receiving counseling for her behavioral problems which were attributable to Henson's actions. Thus, she had "discovered" that the tort had occurred and the statute of limitations began running at that time for prior acts committed by Henson. Each subsequent time Henson touched Konkle inappropriately, the discovery was simultaneous to the injury and a new statute of limitations began running for that claim.

Konkle's complaint was filed on October 2, 1992. Because the applicable statute of limitations is two years, Konkle's claim against the Church Defendants for Henson's actions which occurred prior to October 2, 1990, is barred. Thus, we conclude that partial summary judgment in favor of the Church Defendants was proper and the only viable claims remaining are for acts which occurred after October 2, 1990.[11]

## IV.

### Suit by a Member of an Unincorporated Association

On cross-appeal, the Local Church argues that the trial court erred by not granting summary judgment in its favor because Konkle, as a member of an unincorporated association, is precluded from suing the association. Konkle counters that there is a genuine issue of material fact concerning whether she was a member of the Local Church which precludes summary judgment. In support of her argument, she points to her affidavit in which she stated that she did not consider herself to be a member of the Local Church or any other Pentecostal church.

The general rule in Indiana is that a member of an unincorporated association is precluded from bringing suit against the association. *Calvary Baptist Church of Marion, Indiana v. Joseph,* 522 N.E.2d 371, 374 (Ind.1988).

> The theory of the general rule is that the members of an unincorporated association are engaged in a joint enterprise. The negligence of each member in the prosecution of that enterprise is imputed to each and every other member so that the member who has suffered damages through the tortious conduct of another member of the association may not recover from the association for such damage. It would be akin to the person suing himself as each member becomes both a principal and an agent as to all other members for the actions of the group itself.

*Id.* at 374–75.

Furthermore, a party cannot create an issue of material fact by submitting an affidavit which directly contradicts prior, sworn deposition testimony. *Keesling v. Baker & Daniels,* 571 N.E.2d 562, 568 (Ind. Ct.App.1991), *trans. denied* (citing *Gaboury v. Ireland Road Grace Brethren, Inc.,* 446 N.E.2d 1310 (Ind.1983), *reh. denied* ). If this were allowed, it would " 'greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " *Gaboury, supra,* at 1314 (quoting *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)).

---

11. The trial court erroneously used the date August 4, 1990, in its order rather than October 2, 1990. August 4, 1990, is the date when claims from Konkle's minority expired.

Here, Konkle attempts to create a material issue of fact in her affidavit by stating that "she does not now consider herself ever to have been a member of the United Pentecostal Church in Warsaw, Indiana, nor any other United Pentecostal churches." Record at 335. In support of her statement, she contends that she did not have the requisite understanding to fulfill her membership nor did she contribute financially to the Local Church. In addition, she states that her attendance at services and church activities declined as she grew older. The Local Church points to several allegations in her complaint and statements in her deposition [12] which allegedly contradict her affidavit.

Most of the allegations and testimony relate to her status while she was a child. Because of our decision concerning the statute of limitations, we are only concerned with Konkle's membership status after October 2, 1990. Konkle stated in her deposition that she had been attending a Pentecostal church in Marion, Indiana. She does not indicate when she left the Local Church and began attending the Marion church. Although her statement that she was never a church member is a direct contradiction of her deposition testimony, the statement that her church attendance declined is not. A reasonable inference may be drawn from the testimony and affidavit that she withdrew from the Local Church. If that occurred prior to the time

the molesting ceased, she would not be prohibited from bringing suit for events which occurred after her withdrawal because she would no longer be a member of the association. Accordingly, we conclude that a genuine issue of fact exists concerning if and when Konkle withdrew from the Local Church and the trial court properly denied summary judgment to the Local Church on this ground.[13]

## V.

### Failure to State a Claim

Finally, the International Church argues that the trial court erred in not granting summary judgment because Konkle's allegations do not support any causes of action which are recognized in Indiana. We have already determined that Indiana recognizes an action for negligent hiring, supervision, and retention. See Part I, *supra*. This creates a duty on the part of the employer with regard to third persons injured by its employees. To prevail on her claim, Konkle must show that the Church Defendants knew or had reason to know of Henson's misconduct and failed to take appropriate action. *Levinson, supra*, at 1269.

Assuming that each of the Church Defendants qualifies as Henson's employer, Konkle has not designated any evidence

---

12. In her complaint, Konkle alleges that Henson had a duty to conduct himself "in a normal fashion between child and pastor." Record at 16. For Henson to be Konkle's pastor, she had to be a church member. In addition, Konkle stated in her deposition that she had grown up in the Pentecostal Church, she did not report Henson's actions because she was "still in the church," and that she had recently stopped attending church. All of these statements allude to church membership.

13. Konkle makes several other arguments concerning the *Calvary Baptist* rule which we briefly address. She first argues that Indiana should follow the example of other jurisdictions and abandon the *Calvary Baptist* rule because of its harshness. Although we agree that the rule can be harsh, we must follow Indiana Supreme Court precedent.

Konkle also argues that *Calvary Baptist* is inapplicable to her case because (1) it does not apply to intentional torts, (2) there was no joint enterprise, (3) the Local Church ratified or acquiesced to Henson's actions, and (4) the rule does not apply to hierarchial associations. Each of these contentions lack merit. First, Konkle's remaining claim is for negligent hiring, supervision and retention of an employee. The issue of *Calvary Baptist*'s application to intentional torts is not before us. Second, even though Henson's actions may not have been a joint enterprise, the wrong at issue is the Local Church's conduct with regard to his employment which was a joint enterprise. Third, because the group was involved in a joint enterprise, there is no ratification issue. The entire organization was involved. Fourth, although the church in *Calvary Baptist* was a congregational as opposed to hierarchial church, the rule has been applied to local associations which are affiliated with higher organizations. See Foster v. Purdue University Chapter of the Beta Mu of Beta Theta Pi, 567 N.E.2d 865 (Ind.Ct.App.1991), *trans. denied* (local chapter was member of national, incorporated fraternity).

which shows that any of the Church Defendants knew about Henson's misconduct when he was hired in 1954. Therefore, Konkle's claim of negligent hiring must fail and the Church Defendants are entitled to summary judgment.

Similarly, Konkle's claims against the International Church for negligent supervision and retention must also fail. Although Konkle has alleged that the International Church was aware of Henson's misconduct and should have disciplined or dismissed him, the designated evidence only demonstrates a question of fact as to whether the Local Church and District Church knew of Henson's actions. The International Church, which is only affiliated with the Local Church and District Church through its Constitution and Judicial Procedures, was not informed. The evidence before the trial court does not indicate that Konkle invoked the Judicial Procedures, which is the only mechanism by which the International Church could have taken action against Henson. According to the Judicial Procedures, the District Church forms a committee to investigate alleged misconduct upon the submission of a complaint signed by two or more persons. Only after this investigation is completed and the District Board determines that the evidence warrants a trial does the International Church become involved. Konkle has not alleged, nor does the record reveal, that she or anyone else ever filed a complaint against Henson with the District Church. Therefore, the International Church could not have disciplined Henson. Accordingly, we conclude that because the evidence does not show that the International Church was aware of Henson's actions, summary judgment in favor of the International Church is proper on Konkle's claims for negligent hiring, supervision and retention.[14]

In sum, we conclude that the trial court erred in granting summary judgment to the Church Defendants on First Amendment

grounds. However, summary judgment was proper in favor of the Church Defendants on the basis that Henson's actions were outside the scope of his employment; that the statute of limitations barred claims arising before October 2, 1990; that the designated evidence failed to support a claim for negligent hiring against any of the Church Defendants; and that the designated evidence failed to support a claim for negligent supervision and retention against the International Church. Further, summary judgment was properly denied to the Church Defendants on the ground that Konkle was prohibited from suing a non-incorporated association of which she was a member. Accordingly, we remand to the trial court for proceedings on Konkle's claims arising after October 2, 1990 against the Local Church and the District Church for negligent supervision and retention.

Affirmed in part, reversed in part, and remanded.

BAKER and FRIEDLANDER, JJ., concur.

14. The International Church also argues that the Church Defendants owed Konkle no duty to report the abuse because they had no knowledge that she was being abused and no special relationship existed. See *J.A.W. v. Roberts*, 627 N.E.2d 802 (Ind.Ct.App.1994). However, Konkle stated in her Reply Brief that she was not making a claim based upon the failure to report the abuse she was suffering. Instead, her claim is based upon the Church Defendants' failure to take action regarding prior reports of abuse by Henson. This is included in her claim for negligently hiring, supervising and retaining Henson.