In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1205

SONDRA J. HANSEN AND WILLIAM R. HANSEN,
INDIVIDUALLY AND ON BEHALF OF C.H.,

*Plaintiffs-Appellants,*

*v.*

BOARD OF TRUSTEES OF HAMILTON SOUTHEASTERN
SCHOOL CORPORATION,[1]

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05 C 670—**Larry J. McKinney**, *Judge.*

ARGUED SEPTEMBER 23, 2008—DECIDED DECEMBER 23, 2008

Before EASTERBROOK, *Chief Judge*, and KANNE and
TINDER, *Circuit Judges*.

---

[1] The Hansens also named Dmitri B. Alano as a co-defendant
in this action, but he is not involved in this appeal.

KANNE, *Circuit Judge.*   Dmitri Alano, a teacher and assistant band director at Hamilton Southeastern High School ("HSE"), engaged in an improper sexual relationship with a student. The student's parents, the Hansens, filed suit individually and on behalf of their daughter against both Alano and the Hamilton Southeastern School Corporation ("HSSC"). They brought claims against both defendants under Indiana law, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* The district court granted summary judgment in favor of HSSC on all claims. The Hansens appeal, arguing that the district court erred by (1) granting summary judgment against them on their Title IX claim, (2) exercising supplemental jurisdiction over their state claims against HSSC, and (3) granting summary judgment against them on those state claims. We consider whether the district court's decisions were proper, and we conclude that they were.

## I. BACKGROUND

The Hamilton Southeastern School Corporation serves K-12 students in a number of schools in central Indiana, including two senior high schools. HSSC has an established application process for hiring new teachers. An applicant must submit an application, resume, references, and transcripts. The school district's central office screens the applications, verifies references, and ensures that a criminal background and sexual offender check have been completed. HSSC officials review the applications and

select a pool of potential candidates, who then interview with the principal of the school that has the vacancy. From the pool of candidates, the principal recommends a candidate to HSSC's assistant superintendent. The assistant superintendent then conducts a final interview, in which he evaluates the prospective teacher's methodology and judgment. If the assistant superintendent is comfortable with the applicant, he makes a hiring recommendation to the school board, which makes the final hiring decision.

In addition to its hiring policies and procedures, HSSC has general policies prohibiting discrimination and sexual harassment, and it provides regular sexual harassment training to all of its teachers. HSSC also maintains guidelines on proper behavior between teachers and students, which are recorded in a handbook available to both teachers and students.

Dmitri Alano graduated with a bachelor's degree in music education from Butler University in 1987. After graduating, Alano served as the director of instrumental music and the band director at Waldron High School from 1987 to 1998. In 1998, HSSC hired Alano as a teacher and assistant band director at HSE.

While a student at Butler and after graduating, Alano participated in a music ensemble that performed around the state. During a visit to HSE, Alano met Michael Niemiec, the school's band director. In 1992, after the ensemble lost its trombone player, Niemiec auditioned and joined the group. Alano and Niemiec became better acquainted, and in the summer of 1994, Alano volunteered

to assist Niemiec with the HSE marching band. Alano assisted Niemiec in this capacity during the next four summers.

In 1998, due to the school's growth, HSE sought to employ an assistant band director. Niemiec encouraged Alano to apply for the position. Alano applied according to HSSC's normal application procedure. He submitted the required application materials, including his resume, transcripts, references, and recommendations. Among his materials, Alano submitted a positive recommendation from the principal at Waldron High School, his previous supervisor. The principal strongly recommended Alano and expressed no reservation about his ability to perform the job. Alano also submitted a completed questionnaire that asked whether he had ever been investigated for, charged with, or resigned because of any misconduct, including sexual abuse or misconduct. Alano replied "no" to all questions and signed the form.

HSSC confirmed that Alano had a valid Indiana teacher's license, which meant that he had passed a criminal background check. The school district also confirmed that Alano was not on the sex offender registry.

Alano interviewed with the principal at HSE, Glen Nelson. Nelson checked Alano's references by calling an assistant principal at Waldron, and he spoke with Niemiec about Alano. Following the interview, Nelson recommended to the assistant superintendent, Dr. Richard Hogue, that HSSC hire Alano. Hogue contacted Nelson about Alano and the particular needs for the open position. Due to the importance of the position, Hogue

also called Niemiec personally. Niemiec again expressed no reservations about Alano, having known him for some time both professionally and socially. Hogue had worked with Niemiec since hiring him in 1986, and Niemiec's opinion was important to his decision. Last, Hogue personally interviewed Alano. Following the interview, Hogue agreed to recommend Alano for employment and sent the recommendation to the school board for final approval. The school district hired Alano, effective July 1,1998. From 1998 to 2000, Alano served as the assistant band director and taught classes at HSE without incident.

During the 2000-2001 school year, Alano began a sexual relationship with C.H., a student enrolled in band and one of his classes. C.H. was born in 1986, and she attended HSE from 2000 to 2004. During her freshman and sophomore years, C.H. and Alano engaged in sexual banter, which progressed to sexual contact on multiple occasions. The sexual encounters occurred in the school's band room, music practice rooms, or band offices. According to C.H., Alano provided her passing grades in exchange for the relationship. C.H. did not disclose the relationship to anyone at or around the time it occurred, and she admittedly concealed the relationship from school officials, teachers, her parents, and her boyfriend. In 2002, at the end of her sophomore year, C.H. quit band and had no further sexual contact with Alano.

Nearly two years later, in January 2004, the Hansens hospitalized C.H. for substance abuse treatment. On January 19, 2004, C.H. admitted to a therapist that she engaged in a sexual relationship with a teacher. This was

the first time she revealed the relationship to anyone. The hospital informed her parents, and local police began a criminal investigation. Police notified HSSC officials of the allegations, which was the first time the school learned of Alano's misconduct. The school district promptly suspended Alano, and he ultimately resigned from the school after pleading guilty to sexual battery.

During the investigation of Alano's misconduct toward C.H., investigators learned that he had engaged in two prior relationships with former students. The first was with Julie Harker, who is now Alano's wife. Harker had been Alano's student at Waldron High School, but the two began their romantic relationship after Harker graduated. Both Alano and Harker denied that anything inappropriate occurred while she was his student, and the Hansens have produced no evidence to the contrary. The Hansens noted that Niemiec knew that Alano married a former student because he was acquainted with Alano and attended their wedding. They also asserted that it was "common knowledge" around HSE that Alano married a former student.

Alano's second relationship with a former student was with Alicia Rhoades, which began while she was a student at Waldron High School. The two engaged in a physical relationship while Rhoades was a student, which led to sexual intercourse after she graduated. No one at HSE or Waldron knew about this relationship until investigators learned of it after Alano's arrest in 2004.

The Hansens brought two federal claims, under Title IX and 42 U.S.C. § 1983, and five claims under Indiana state

law, naming both Alano and HSSC as defendants in each. Both defendants filed motions for summary judgment. On October 19, 2007, the district court granted summary judgment in favor of HSSC on all seven counts. The district court granted summary judgment in Alano's favor on the Title IX count and the state law claim for negligent hiring, retention, and supervision. The remaining five claims against Alano remain pending in the district court, including the federal claim under 42 U.S.C. § 1983. On December 28, 2007, the district court granted the Hansens' Motion for Issuance of Final Order under Federal Rule of Civil Procedure 54(b), allowing the present appeal. The district court stayed the proceedings against Alano, pending the outcome of this appeal.

## II. ANALYSIS

We review the district court's decision to grant summary judgment in favor of HSSC *de novo*, and we draw all reasonable inferences in the non-moving party's favor. *See Lucas v. PyraMax Bank*, 539 F.3d 661, 666 (7th Cir. 2008). Summary judgment is appropriate where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). To survive a motion for summary judgment, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The Hansens argue that the district court erred in granting summary judgment against them on their Title IX claim against the school district. After dismissing their Title IX claim, the district court exercised jurisdic-

tion over their state law claims and granted summary judgment against the Hansens on those claims as well. The Hansens argue that the district court erred by exercising supplemental jurisdiction over the state claims. If jurisdiction was proper, the Hansens assert that the court erred by granting summary judgment against them. We address each issue below.

*A. Title IX*

Title IX prohibits discrimination on the basis of sex in educational programs or activities that are supported by federal financial assistance. 20 U.S.C. § 1681(a). Congress authorized an administrative enforcement scheme for Title IX, but the Supreme Court has recognized an implied private right of action for the victim of illegal discrimination to enforce the statute, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979), as well as the ability to recover monetary damages, *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992).

In enacting Title IX, Congress sought to hold educational institutions liable for their own misconduct, not for the misconduct of an employee. *See, e.g., Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289-90 (1998); *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1018-19 (7th Cir. 1997). That said, a teacher's sexual harassment of a student may render a school district liable for sex discrimination under Title IX. *Franklin*, 503 U.S. at 75; *see also Metro. Sch. Dist. Perry Twp.*, 128 F.3d at 1021-22. The Hansens argue that the district court should have applied a "knew or should

have known" standard to their Title IX claim, meaning that if HSE or HSSC knew or should have known of Alano's improper conduct and failed to respond appropriately, the school district may be liable for sex discrimination.

The standard the Hansens assert is incorrect. The Supreme Court has flatly rejected applying a "knew or should have known" standard to Title IX claims. *Gebser*, 524 U.S. at 277. When a Title IX claim for damages against the educational institution is based on a teacher's conduct, the plaintiff must prove that "an official of the school district who at a minimum has authority to institute corrective measures . . . has *actual notice* of, and is deliberately indifferent to, the teacher's misconduct." *Id.* (emphasis added); *see also Delgado v. Stegall*, 367 F.3d 668, 671 (7th Cir. 2004).

In *Gebser*, the Supreme Court considered the limits of a school district's liability under Title IX, thoroughly analyzed the statute's history and purpose, and expressly refused to impose liability on a school district unless it had actual knowledge of a teacher's sexual harassment *and* acted with deliberate indifference to the misconduct. 524 U.S. at 288-93. The Court rejected the use of both vicarious liability and constructive notice principles in Title IX cases. *Id.* at 285. The Court reasoned that a school district's liability under Title IX arose from "an official decision by the recipient not to remedy the violation," *id.* at 290, that is, where the school district's own actions effectively "cause[d]" the discrimination, *id.* at 291.

As such, a school district is subject to a private damages action only where it is deliberately indifferent to *known*

acts of discrimination or harassment. *Id.* at 290-91; *see also Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642-43 (1999) (discussing *Gebser* and stating that a school district could be liable under Title IX "by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge"); *Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823 (7th Cir. 2003).

The Hansens cited our decision in *Delgado* to support their position that something less than actual knowledge of a teacher's misconduct will suffice as a predicate to Title IX liability. Their reliance on our opinion in that case is misplaced. In *Delgado*, we specifically stated that, under *Gebser*, a plaintiff in a Title IX damages suit based on a teacher's behavior must prove both "actual knowledge of misconduct, not just actual knowledge of the risk of misconduct, and . . . that the officials having that knowledge decided not to act on it." 367 F.3d at 672. We noted that a school district need not posses actual knowledge of a teacher's acts directed at a *particular plaintiff*, but it must still have actual knowledge of misconduct that would create risks "so great that they are almost certain to materialize if nothing is done." *Id.* Thus, if a teacher had been known to be a "serial harasser," a school district might be found to have actual knowledge of that teacher's misconduct and that students may be at great risk. *Id.*

Therefore, in order to survive summary judgment, the Hansens must establish a genuine issue of fact as to whether an appropriate official at HSSC or HSE had (1) actual knowledge of misconduct by Alano that created a

serious risk to its students, and (2) responded with deliberate indifference to the misconduct. They fail to do so.

The Hansens have presented no evidence from which a reasonable juror could infer that an official at HSSC or HSE who had authority to institute corrective measures had actual knowledge of Alano's misconduct against C.H. or any other former student. C.H. admitted that she concealed the relationship from school officials, her parents, and her boyfriend. The first time she told anyone of the relationship was to her therapist in January 2004, and the Hansens presented no evidence that anyone at the school knew of the misconduct until that time. Upon learning of the allegations, the school district promptly suspended Alano.

The Hansens also argued that HSSC knew of Alano's relationships with former students Rhoades and Harker, and that Alano therefore presented a serious risk of harm to other students. The record, however, reveals nothing to indicate that HSSC knew of Alano's relationship with Rhoades until after C.H. disclosed her relationship with Alano in 2004, a fact the parties do not dispute. And while Niemiec and other faculty at HSE may have known that Harker was Alano's former student before marrying him, nothing in the record suggests that the two engaged in a sexual or otherwise improper relationship while she was his student. Simply knowing that a teacher married a woman formerly his student, without actual knowledge of misconduct, does not suffice to hold a school district liable under Title IX. The Hansens even state in their brief that "[w]hile HSE may not have had

'actual knowledge' of the relationships," the information that it did have "should have been enough to elicit some concern over their students" and therefore sufficient for a Title IX claim. (Petr.'s Br. 10.)

It is not enough. The Hansens produced no evidence from which a reasonable juror could infer that the school district had actual knowledge of any misconduct by Alano. Accordingly, HSSC is entitled to summary judgment on the Title IX claim.

## B. Supplemental Jurisdiction

After the district court granted summary judgment against the Hansens on their Title IX claim, it addressed their state claims on the merits and granted summary judgment against them. Even though the Hansens chose to bring this suit in federal court, they assert that the court should have declined to exercise jurisdiction over the remaining state claims. Thus, before we reach the substance of the Hansens' state law claims against HSSC, we first consider whether the district court erred in retaining jurisdiction over them. We review a district court's decision to exercise supplemental jurisdiction under 28 U.S.C. § 1367 for an abuse of discretion. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 499-500 (7th Cir. 1999).

A district court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court also has supplemental jurisdiction over any claim that is "so related to claims in the action within such original juris-

diction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Congress enacted § 1367 to codify long-standing principles of pendent and ancillary jurisdiction, *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997), whereby federal courts may exercise supplemental jurisdiction over a state claim if the state and federal claims "derive from a common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

As an initial matter, the district court properly exercised supplemental jurisdiction over the Hansens' state claims under § 1367(a) at the outset of this litigation. The district court's original jurisdiction derived from the Hansens' federal claims against Alano and HSSC under Title IX and 42 U.S.C. § 1983. Neither party disputes that the federal and state claims against both defendants form part of the same case or controversy. All claims arose out of the same facts: Alano's sexual misconduct against a student.

The question the Hansens raise is whether the district court should have declined to exercise supplemental jurisdiction over the state claims, pursuant to § 1367(c)(3), after it granted summary judgment in HSSC's favor on the Title IX claim. According to § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Hansens have argued only that the court should have relinquished jurisdiction pursuant to § 1367(c)(3).

When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3). *See Groce*, 193 F.3d at 501; *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994). But while a district court may relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (discussing whether a district court erred by relinquishing supplemental jurisdiction after dismissing all federal claims). Supplemental jurisdiction is a doctrine of discretion, and its "justification lies in considerations of judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726.

The Hansens' argument that the district court erred by reaching the merits of their state claims fails for two reasons: (1) the district court still had original jurisdiction over pending federal claims against HSSC's co-defendant, Alano, and (2) even if no federal claims remained against either defendant, the district court did not abuse its discretion by exercising supplemental jurisdiction over the Hansens' state claims.

First, contrary to the Hansens' argument, the district court had *not* dismissed all federal claims over which it had original jurisdiction. The district court's original jurisdiction derived from claims against both Alano and HSSC under 42 U.S.C. § 1983 and Title IX. After granting summary judgment on the Title IX claim, the district court retained original jurisdiction over the claims against Alano, including the claim under 42 U.S.C. § 1983, and the court stayed those proceedings pending the results of this appeal.

Therefore, the district court's discretion to relinquish jurisdiction under § 1367(c)(3) was never triggered, because the court did not dismiss "all claims over which it has original jurisdiction." *See* 18 U.S.C. § 1367(c)(3). Indeed, even if the Hansens had not brought a single federal claim against the school district, the district court would have had supplemental jurisdiction over the state claims against HSSC because they constituted the same "case or controversy" as the federal claim against co-defendant Alano. *See* 28 U.S.C. § 1367(a). Thus, the district court did not err by exercising jurisdiction over the Hansens' state claims against HSSC after granting summary judgment on the Title IX claim.

Second, even if the district court could have relinquished the Hansens' state law claims against HSSC under § 1367(c)(3), it did not abuse its discretion by retaining jurisdiction. While a district court *may* relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so. *See Garrity*, 479 F.3d at 907; *Groce*, 193 F.3d at 500 & n.6 (noting that

"our case law makes clear" that a district court does not automatically lose supplemental subject matter jurisdiction once it grants summary judgment on the federal claim). The district court has broad discretion in deciding whether to retain supplemental claims. *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997).

A district court deciding whether to retain jurisdiction pursuant to the factors set forth in § 1367(c) "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Int'l Coll. of Surgeons*, 522 U.S. at 173 (quotations omitted); *see also Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir. 1994). "That the jurisdictional hook is eliminated before trial at best only preliminarily informs the balance; the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources can and should make the difference in a particular case." *Timm*, 32 F.3d at 277. So long as an "arguable balance" of these factors favors the district court's determination to exercise jurisdiction, that decision should not be disturbed. *Id.*

A balance of the factors listed above favors the district court's decision to exercise jurisdiction over the Hansens' state claims against HSSC. The district court and the parties in this case have already expended substantial judicial resources—litigation began in May 2005, and the parties have completed discovery. *Cf. Wright*, 29 F.3d at 1251 (noting that judicial economy is rarely a good reason to retain jurisdiction when a case is dismissed on the pleadings, before discovery even begins). The state

claims against HSSC are based on Alano's misconduct, and to litigate Alano's liability in federal court and the school district's liability in state court would duplicate effort, time, and expense. The claims are intertwined and judicial economy is served by treating them in one forum. Furthermore, the correct disposition of the state claims against HSSC is clear and does not entangle the federal courts in difficult issues of state law. *See Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996) (noting that if the correct disposition of the supplemental claims is clear, considerations of economy favor retaining jurisdiction), *vacated on other grounds*, 522 U.S. 3 (1997); *see also Van Harken*, 103 F.3d at 1354. Therefore, even if § 1367(c) applied, the district court did not abuse its discretion by retaining jurisdiction of the state claims.

*C. Summary Judgment on the State Claims*

Having determined that the district court properly exercised jurisdiction, we consider whether the district court erred by granting summary judgment in favor of the school district on the Hansens' state claims. The claims can be separated into two categories: (1) claims directly against HSSC for its own negligence in hiring, supervising, or retaining Alano, and (2) assorted tort claims for which HSSC would be vicariously liable for Alano's wrongful conduct under the doctrine of *respondeat superior*. As stated above, we review a district court's grant of summary judgment *de novo* and consider all inferences in the light most favorable to the non-moving party. *See Lucas*, 539 F.3d at 666. The Hansens must present evidence

showing that there is a genuine issue for trial. *Keri*, 458 F.3d 628.

### 1.    *Negligent Hiring, Supervision, and Retention*

The Hansens allege that HSSC acted negligently in hiring, supervising, and retaining Alano. The district court granted summary judgment in HSSC's favor because it found there to be no evidence that the school district knew that Alano had engaged in inappropriate conduct with C.H. or any of his prior students. The Hansens assert that the district court erred by requiring them to demonstrate that HSSC had actual knowledge of Alano's misconduct. They argue that they produced sufficient evidence to create a genuine issue of fact under what they claim is the correct standard: whether HSSC *should have known* that Alano had engaged in a habit of misconduct.

Indiana recognizes a cause of action against an employer for negligent hiring, supervision, or retention of an employee. *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994). Indiana has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort, under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee. *Konkle v. Henson*, 672 N.E.2d 450, 454-55 (Ind. Ct. App. 1996).

Indiana courts are somewhat unclear on the applicable standard for holding an employer liable for negligent

hiring, retention, or supervision. Some decisions state that to be liable an employer must have actual knowledge of an employee's habit of misconduct and fail to respond reasonably. *See, e.g.*, *Levinson*, 644 N.E.2d at 1269 ("In order to prevail on this theory, the plaintiff must show that the defendant employer negligently retained an employee who the defendant *knew* was in the habit of misconducting himself."(emphasis added)); *Briggs v. Finley*, 631 N.E.2d 959, 966-67 (Ind. Ct. App. 1994) (stating that an employer may be liable for negligent retention "only if he *knows* the employee is in the habit of misconducting himself in a manner dangerous to others"(emphasis added)). Other decisions, however, state that an employer may be liable if it merely should have known or had reason to know of the misconduct. *See, e.g.*, *Grzan v. Charter Hosp. of Nw. Ind.*, 702 N.E.2d 786, 793 (Ind. Ct. App. 1998) (holding that a defendant must have known or "had reason to know" of the misconduct and failed to take appropriate action); *Konkle*, 672 N.E.2d at 460 (citing *Levinson*, which states an actual knowledge standard, but then stating that "[t]o prevail on her claim [of negligent hiring, supervision, and retention, plaintiff] must show that the Church Defendants *knew or had reason to know* of [defendant's] misconduct and failed to take appropriate action" (emphasis added)); *Frye v. Am. Painting Co.*, 642 N.E.2d 995, 998 (Ind. Ct. App. 1994) (noting that in an action for negligent retention of an employee, "evidence of prior similar actions committed by an employee are often admissible to establish the employer's *actual or constructive knowledge* of the employee's propensity to commit a later act of violence" (emphasis added)).

Based on our review of the record in this case, the Hansens presented no evidence that HSSC either knew, should have known, or had reason to know that Alano was in "the habit of misconducting himself." *Levinson*, 644 N.E.2d at 1269. Thus, the Hansens failed to satisfy even the lesser standard, and we need not anticipate how the Indiana Supreme Court would resolve the question of whether actual knowledge of misconduct is required to hold an employer liable for negligent hiring, supervision, or retention.

The Hansens base their negligent hiring claim on the fact that Alano allegedly engaged in relationships with two former students prior to his employment at HSE, one of whom had become Alano's wife by the time HSSC hired him. They further assert that, while the school district may not have acquired knowledge about the prior relationships directly, it should have inquired whether Alano ever had a sexual or physical relationship with a student, and it chose to ignore "red flags." However, the Hansens produced no evidence that HSSC failed to exercise reasonable care in hiring Alano or that it knew or should have known of any negative employment information when it hired Alano.

As detailed above, and taking the facts in the light most favorable to the Hansens, HSSC followed its established hiring procedure when it hired Alano. This required him to submit an application and related materials, provide references, and undergo a series of interviews with school officials. Along with the application, Alano completed a questionnaire stating that he had never been

investigated, charged with, or resigned because of any misconduct, including sexual abuse or contact. He received positive recommendations from the principal and an assistant principal at his previous school, and from Michael Niemiec, HSE's band director. The school ensured that Alano possessed a valid teaching license, which the state issues only after completing a criminal background check, and also confirmed that Alano's name was not on a list of known sex offenders. HSE's principal, Glen Nelson, recommended Alano for employment after interviewing him, checking his references, and discussing his application with Niemiec. The assistant superintendent, Dr. Hogue, also interviewed Alano, contacted Niemiec, and agreed to recommend Alano for employment.

During this process, HSSC received no information that Alano had a history of improper conduct with his students. Rather, the Hansens acknowledge that HSSC "may not have had 'actual knowledge' of the relationships" with Rhoades and Harker, but they assert that it "should have inquired" about past sexual relationships. As noted above, no one at HSE or Waldron knew about Alano's improper conduct with Alicia Rhoades, his former student at Waldron, nor do the Hansens point to anything indicating that either school should have known. The Hansens presented no evidence that Alano's relationship with Harker was improper while they were in a teacher-student relationship. The Hansens seek to impute knowledge to HSSC because Niemiec knew that Alano married a former student. But even if HSSC knew or should have known that Harker was Alano's former student, the Hansens fail to demonstrate that this knowledge alone

would put the school district on notice that Alano's relationship with Harker was improper, that he was in a habit of misconducting himself, or that he otherwise represented a threat to his students.

The Hansens also argue that HSSC should have asked Alano directly whether he ever had a sexual or physical relationship with a former student, citing *Interim Health-care of Fort Wayne, Inc. v. Moyer ex rel. Moyer*, 746 N.E.2d 429 (Ind. Ct. App. 2001). In *Moyer*, the plaintiffs alleged that a health care agency negligently hired a home health aide, who later injured a child patient. *Id.* at 430-31. Because there was no evidence that the employer actually contacted any of the aide's previous employers, the court found an issue of fact for the jury that precluded the defendant's motion for summary judgment. *Id.* at 435. A concurring opinion added that to survive summary judgment, the plaintiffs also must demonstrate proximate cause, i.e., that had the employer contacted the aide's former employers, it would have discovered negative employment information. *Id.* at 436-37 (Baker, J., concurring).

Unlike the plaintiffs in *Moyer*, the Hansens have presented no evidence that HSSC acted unreasonably in contacting Alano's references or former employers, nor have they presented evidence that any additional references would have revealed negative employment information had HSSC contacted them. Quite the opposite, all of the references that Alano provided spoke highly of him. The Hansens suggest that had the school officials asked Alano directly, he would have divulged his

previous relationships, and Alano himself stated this to be true. HSSC, however, required Alano to complete a questionnaire that asked whether he had ever been investigated, charged with, or resigned because of any misconduct, including sexual abuse or contact. He responded that he had not, and he signed the statement. The failure to ask the specific question of whether he engaged in any prior relationships with a student was not unreasonable, particularly in light of the school district's thorough hiring procedures and the information available.

In sum, nothing in the record creates an inference that HSSC knew or should have known of any negative employment information regarding Alano at the time it hired him. Furthermore, given the school district's hiring process, no evidence indicates that it acted unreasonably in hiring him.

The Hansens' claim that HSSC negligently retained or supervised Alano fails for similar reasons. The Hansens rely on evidence of the same two prior relationships with former students, discussed above, to create an inference that Alano had a habit of misconduct and represented a risk of harm to his current students. For the same reasons, these two relationships do not establish that HSSC knew or should have known of any misconduct by Alano. The Hansens point to no additional evidence that suggests that school officials knew or should have known of misconduct during Alano's tenure at the school or that he presented a risk of harm to his students after he began his employment. Nothing in the record demonstrates that HSSC was aware of Alano's relationship

with C.H. while she was a student, a fact to which both parties agree. Nor is there any evidence that the school district acted unreasonably in supervising or retaining Alano in light of any information it may have had. In fact, HSSC promptly suspended Alano upon learning of the allegations. Thus, taking all inferences in the Hansens' favor, no genuine issue of material fact exists regarding whether HSSC negligently hired, retained, or supervised Alano, and summary judgment in the school district's favor was proper.

### 2. *Respondeat Superior*

The Hansens also attempted to hold the school district vicariously liable for Alano's tortious conduct under the doctrine of *respondeat superior*, alleging that the trial court erred in determining that Alano's acts were outside the scope of his employment.[2]

---

[2] The Hansens allege that Alano's actions were both within the scope of his employment (as is required for *respondeat superior*) and outside the scope of his employment (as is required for negligent hiring, supervision, and retention). As the district court noted in its Order on October 19, 2007, this is inconsistent with the Indiana Tort Claims Act, Ind. Code § 34-13-3-5(b), which states that a plaintiff may not sue both a government employee in a personal capacity and the governmental employer for the employee's acts committed within the scope of employment. *See Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003); *City of Gary v. Conat*, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004).

(continued...)

Under the doctrine of *respondeat superior*, an employer is vicariously liable for the wrongful or tortious acts of its employees that were committed within the course and scope of their employment. *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). An employee is acting within the scope of his employment when the injurious act is incidental to the conduct authorized, or when it furthers, to an appreciable extent, the employer's business. *Id.*; *see also Shelby v. Truck & Bus Group Div. of Gen. Motors Corp.*, 533 N.E.2d 1296, 1298 (Ind. Ct. App. 1989) ("In order to be within the scope of employment the employee must be in the 'service of the employer.'"). Vicarious liability may even be imposed upon an employer for the criminal acts of an employee, *Barnett*, 889 N.E.2d at 284, but an employer is not liable for an employee's acts committed outside the scope of his employment, "even though the particular injury could not have occurred without the facilities afforded by the relation of the servant to [the] master," *Gomez v. Adams*, 462 N.E.2d 212, 223 (Ind. Ct. App. 1984).

An employer is not always immune from vicarious liability for an employee's sexual misconduct. *See Stropes ex rel. Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 249 (Ind. 1989); *Southport Little League v.*

---

[2] (...continued)

Despite the impropriety of the inconsistent pleadings, the district court determined that Alano was acting outside the scope of his employment as a matter of law. We therefore note the inconsistent pleadings and also consider whether the district court properly decided this issue.

*Vaughan*, 734 N.E.2d 261, 270-71 (Ind. Ct. App. 2000). But Indiana courts have found whether sexual misconduct is within the scope of one's employment to be a genuine issue of fact only in circumstances where the employee's job duties involved extensive physical contact with the alleged victim, such as undressing, bathing, measuring, or fitting. *Compare Stropes*, 547 N.E.2d at 249-50, *and Southport Little League*, 734 N.E.2d at 271, *with Barnett*, 889 N.E.2d at 286, *Konkle*, 672 N.E.2d at 457, *and Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691 (Ind. Ct. App. 2006), *abrogated on other grounds by State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778, 782 & n.2 (Ind. Ct. App. 2006).

In *Stropes*, the Indiana Supreme Court reversed summary judgment in favor of the defendant children's center, holding that a genuine issue of fact existed as to whether a nurse's aide employed by the center acted within the scope of his employment when he sexually assaulted a mentally disabled fourteen-year-old patient. 547 N.E.2d at 250. The aide's authorized job duties included physical contact with the victim when undressing him, bathing him, and changing his clothes—acts "unquestionably within the scope of his employment." *Id.* at 249. The sexual assault occurred after the aide undressed the victim and before the aide completed his tasks of changing his bed and redressing him. *Id.* The court stated that the question of whether one's conduct falls within the scope of employment does not turn solely upon the type of act committed, but "the focus must be on how the employment relates to the context in which the commission of the wrongful act arose." *Id.* Therefore, the nature of the aide's acts was "sufficiently associated" with

the aide's authorized duties to avoid dismissal on summary judgment. *Id.* at 250.

Similarly, in *Southport Little League*, the Indiana Court of Appeals affirmed a jury verdict imposing vicarious liability on the defendant for an equipment manager who sexually molested youths participating in a summer baseball program. 734 N.E.2d at 273. The equipment manager's authorized duties included measuring and fitting the boys with uniforms in an equipment shed near the baseball stadium, a task involving some physical contact. *Id.* at 266. The court cited *Stropes* and determined that the circumstances "raise the inference that some of [defendant's] acts were authorized by the Little League" when he committed the wrongful acts of molestation, and that the trial court properly denied summary judgment. *Id.* at 269-70.

Consistent with *Stropes* and *Southport Little League*, Indiana courts have declined to hold an employer vicariously liable for an employee's sexual misconduct in the absence of some authorized duty requiring physical contact with the victim. In *Konkle*, the Indiana Court of Appeals held that church officials were not vicariously liable for sexual misconduct by a minister because the plaintiff produced no evidence that the church authorized the minister's acts. 672 N.E.2d at 457. The minister sexually molested a child on church property on multiple occasions. *Id.* at 453. The court noted that the unauthorized acts were not similar to his authorized duties as a minister, and vicarious liability should not accrue simply because the minister had access to the victim because of his position. *Id.* at 457.

Similarly, in *Lafayette School Corporation*, the Indiana Court of Appeals declined to hold the defendant school district vicariously liable for a teacher's sexual acts against a student. 846 N.E.2d at 702. The teacher in that case engaged in a physical relationship with one of his students, and the relationship involved school time and property. *Id.* at 695. The court affirmed summary judgment on the issue of *respondeat superior* liability because the teacher instigated the relationship on his own initiative, his actions were unrelated to any school function, and the acts were not incident to any service provided by the school corporation. *Id.* at 702. Instead, his acts were "fueled entirely by self-interest in a romantic relationship" with the victim, and the acts were therefore unauthorized. *Id.*

The Indiana Supreme Court recently clarified the appropriate inquiry regarding the scope of one's employment, particularly in cases involving sexual misconduct. *See Barnett*, 889 N.E.2d at 286. The plaintiff in *Barnett* sought public assistance from her local trustee's office, and a male employee advised her that she would have to do some bookwork for him in order to receive assistance. *Id.* at 283. The trustee's employee reviewed the plaintiff's work with her in a back room, then locked the door and sexually assaulted her. *Id.* The trial court granted summary judgment to the trustee employer because the misconduct was outside the scope of the employee's employment. *Id.* at 286.

The Indiana Supreme court analyzed *Stropes* and stressed that the focus should be on "'how the employment relates to the context in which the commission of the

wrongful act arose.' " *Id.* at 285 (quoting *Stropes*, 547 N.E.2d at 249). In cases involving sexual misconduct, a court should examine the nature of the employee's authorized duties and the extent to which they involve physical contact or duties similar to those of the nurse's aide in *Stropes*. *Id.* at 285-86. The court clarified that a statement by the court in *Konkle*, which said that "[i]f some of the employee's actions were authorized, the question of whether the unauthorized acts were within the scope of employment is one for the jury," *Konkle*, 672 N.E.2d at 457, was not a premise stated in *Stropes*. *Barnett*, 889 N.E.2d at 285. Rather, the essential inquiry is whether the employee's wrongful acts are "sufficiently associated" with the nature of that employee's duties and authority. *Id.* (quotations omitted). The court concluded that the employee "was not explicitly or impliedly authorized to touch or confine applicants for assistance," that his wrongful acts "were not incidental to nor sufficiently associated with" his authorized duties, that these acts did not "further his employer's business," and that "they were not motivated to any extent by his employer's interests." *Id.*

Applying the above standards and taking the facts in the light most favorable to the Hansens, we find this case similar to *Barnett*, *Konkle*, and *Lafayette School Corporation*. We therefore agree with the district court that Alano's sexual misconduct was not "sufficiently associated" with his duties as a band instructor so as to fall within the scope of his employment. Alano's authorized duties did not include physical contact with his high school students similar to the employees' duties in *Stropes* and *Southport*

*Little League.* Alano was not explicitly or impliedly authorized to touch students, and his acts of sexual abuse were not an extension of any authorized physical contact. His conduct did nothing to further HSSC's business, nor were those acts motivated by the school district's interests. Instead, his conduct was motivated by his own personal desire to engage in a sexual relationship.

The Hansens asserted that because Alano was a music teacher and had access to "secluded but permitted access band practice rooms," his conduct stemmed from an authorized activity. (Petr.'s Br. 17.) But the fact that "the particular injury could not have occurred without the facilities afforded by the relation of the servant to [the] master" does not render the act within the scope of one's employment. *Gomez*, 462 N.E.2d at 223; *see also Lafayette Sch. Corp.*, 846 N.E.2d at 702 ("[S]imply because [the teacher] used LSC's equipment and facilities to initiate a relationship with [the victim], his acts did not necessarily fall within his scope of employment."). Alano's position as a teacher and the availability of the practice rooms merely provided access to his students, just as any teacher's position provides him or her with access to a large number of students. To hold a school district vicariously liable for a teacher's misconduct in such circumstances would require holding a school district liable for *every* instance of such misconduct occurring on school grounds or because the relationship originated at the school. *Cf. Metro. Sch. Dist. Perry Twp.*, 128 F.3d at 1029-30 ("[I]n virtually every case in which a teacher harasses, seduces, or sexually abuses a student, the teacher's status as a teacher often enables the teacher to abuse the student . . . ." (quotations omitted)).

The Hansens produced no evidence that Alano's duties as a music teacher involved physical contact with a student or were otherwise sufficiently related to his misconduct. Consequently, Alano's acts did not fall within the scope of his employment as a matter of law, and the district court properly granted summary judgment in favor of the school district on the issue of *respondeat superior*.

### 3. *Non-delegable Duty*

Lastly, the Hansens argued that HSSC owed C.H. a non-delegable duty under Indiana law and should be liable for Alano's misconduct, even if it was outside the scope of his employment. Indiana courts, however, have consistently refused to impose a non-delegable duty upon a school for the safe-keeping of its students, recognizing that schools "are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them." *Miller v. Griesel*, 308 N.E.2d 701, 706 (Ind. 1974); *see also Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 974 (Ind. 2001). Rather, schools and school personnel have a duty "to exercise ordinary and reasonable care for the safety of the children under their authority." *Miller*, 308 N.E.2d at 706; *see also Beckett v. Clinton Prairie Sch. Corp.*, 504 N.E.2d 552, 554 (Ind. 1987) ("[T]he appropriate standard is whether a defendant exercised his duty with the level of care of an ordinary prudent person under the same or similar circumstances."). The Indiana Supreme Court stated that an "approach that focuses on rearticulating that duty based upon a given set of facts is misplaced in our view because

to do so presupposes that an issue which is thought to be settled must be revisited each time a party frames the duty issue a little differently." *Mangold*, 756 N.E.2d at 974. Consequently, we find that well-settled Indiana law does not impose a non-delegable duty on HSSC for the safekeeping of its students, and the school district is not liable for Alano's misconduct under such a duty.

### D. The Hansens' § 1983 Claim Against HSSC

We should also briefly address the Hansens' § 1983 claim against HSSC, although the Hansens did not appeal the dismissal of this claim. The district court below held that "the § 1983 claim against the School must be dismissed because Title IX provides the exclusive remedy for the federal claims." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, No. 1:05-cv-670, 2007 WL 3091580, at *4 (S.D. Ind. Oct. 19, 2007) (citing *Doe v. Smith*, 470 F.3d 331, 339 (7th Cir. 2006)).

While this ruling is correct under current precedent, the Supreme Court of the United States recently heard oral argument in a case questioning whether Title IX supersedes § 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165 (1st Cir. 2007), *cert. granted* 76 U.S.L.W. 3485 (U.S. June 9, 2008) (No. 07-1125) (argued Dec. 2, 2008). However, even if the Supreme Court determines that a Title IX claim does not preclude a claim under § 1983, the Hansens' claim against HSSC still fails.

To prevail on a § 1983 claim for damages against a local government, a plaintiff must demonstrate that the alleg-

edly illegal action implemented an official policy or custom adopted by the governmental body. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *Monell* expressly rejects governmental liability based on an employee's misconduct under the doctrine of *respondeat superior*. *Id.* at 691. The Hansens have not alleged—nor could they do so in good faith—that HSSC has a policy or custom favoring sexual abuse or discrimination of its students. Therefore, HSSC cannot be liable for Alano's misconduct under § 1983, and the district court's dismissal was proper.

### III. CONCLUSION

The Hansens failed to demonstrate a genuine issue as to whether HSSC had actual knowledge of Alano's misconduct for their Title IX claim. After dismissing the Title IX claim, the district court properly exercised supplemental jurisdiction over the Hansens' state claims. The district court did not err by granting summary judgment against the Hansens on each of those claims. The Hansens did not establish a genuine issue as to whether HSSC knew or should have known of Alano's misconduct, nor whether the school district acted negligently in light of any knowledge it may have had. Further, Alano's misconduct was outside the scope of his employment as a matter of law. Therefore, we AFFIRM the district court's decision granting summary judgment in favor of HSSC on all claims against it.